Leonard **SHANE**, an Individual, and as Trustee for the Shane Family Voting Trust, and All Former Shareholders of Mercury Savings, a Federal Savings and Loan Association, Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–Appellee.

No. 97–5056.

United States Court of Appeals, Federal Circuit.

Dec. 1, 1998.

Peter K. Rosen, Weisman & Rosen, of Los Angeles, California, argued for plaintiffs-appellants.

Shalom Brilliant, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director.

Thomas M. Buchanan, Winston & Strawn, of Washington, DC, for amici curiae National City Bank of Pennsylvania, et al. Of counsel on the brief were Eric W. Bloom and Charles B. Klein.

Steven S. Rosenthal, Morrison & Foerster LLP, of Washington, DC, for amicus curiae Bank of America. John C. Millian, Gibson, Dunn & Crutcher LLP, of Washington, DC, for amicus curiae Gerald L. Parsky. John V. Austin, Thompson Coburn, of Washington, DC for amicus curiae Mercantile Bank of St. Louis National Association. William T. Reilly, McCarter & English, of Newark, New Jersey, for amicus curiae Statewide Savings Bank, S.L.A. Charles T. Lester, Jr., Sutherland, Asbill & Brennan, of Atlanta, Georgia, for amici curiae SouthTrust Georgia, Inc. (f/k/a Bankers First Corporation), et al. Matthew G. Ash, Kutak Rock, of Washington, DC, for amici curiae Hometown Savings and Loan, et al. Daniel J. Goldberg, Kutak Rock, of Washington, DC for amici curiae LSB Industries, et al. Toni C. Lichstein, Milbank, Tweed, Hadley & McCloy, of New York, New York, for amici curiae Alham, Inc., et al. Sean Murphy, Muldoon, Murphy & Faucette, of Washington, DC for amici curiae Cenlar Capital Corporation, et al. Jerry Stouck, Spriggs & Hollingsworth, of Washington, DC for amici curiae Heartland Savings Bank. Michael G. Shannon, Wallace, Bauman, Fodiman & Shannon, of Coral Gables, Florida, for amici curiae Miami Savings Corp., et al. William J. Harte, William J. Harte, Ltd., of Chicago, Illinois, for amici curiae Alan H. Pollack, et al.

Before RICH, NEWMAN, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Leonard Shane and other former shareholders of Mercury Savings appeal from the decision of the United States Court of Federal Claims dismissing their breach of contract action against the United States for failure to file their claim within six years after their claim first accrued as required by 28 U.S.C. § 2501 (1994). *See Plaintiffs in Winstar–Related Cases v. United States,* 37 Fed. Cl. 174 (1997). In *Ariadne Financial Services Pty. Ltd. v. United States,* 133 F.3d 874 (Fed.Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 67, 142 L.Ed.2d 53 (1998), we affirmed the trial court's dismissal of another plaintiff's claim. Because we conclude that the facts relating to Plaintiff–Appellants Shane et al. are materially indistinguishable from those in *Ariadne,* we affirm the court's dismissal.

## BACKGROUND

Shane et al. are former shareholders in Mercury Savings and constitute several of the numerous plaintiffs involved in the *Winstar* series of cases. In *United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), the Supreme Court affirmed a decision of this court holding the United States liable to three savings and loan institutions for breach of contract stemming from Congress's enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989) (codified as amended in various sections of 12 U.S.C.). The Court ruled that the United States had entered into contracts permitting the institutions to use particular accounting methods in their acquisition of certain failing savings and loan associations,[1] that Congress's adoption of new capital requirements in FIRREA abrogated the Government's commitment, and that the Government was therefore liable in damages. *See Winstar*, 518 U.S. at 843, 116 S.Ct. 2432.

The three *Winstar* plaintiffs were thereafter joined by over 120 other claimants, including Shane and Ariadne, who similarly sought to recover contract damages from the United States under the *Winstar* holding. All *Winstar*-related cases were made subject to special case-management procedures, pursuant to which the parties agreed to resolve certain common issues, including the issue raised here—the government's statute of limitations defense. *See* 28 U.S.C. § 2501 (1994) ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.").

In *Winstar–Related Cases*, the Court of Federal Claims held that the *Winstar* plaintiffs' claims accrued within the meaning of section 2501 either when FIRREA's implementing regulations put the new capital requirements into effect on December 7, 1989,[2] or when the Office of Thrift Supervision (OTS) published a Thrift Bulletin on January 9, 1990, reminding thrifts that FIRREA eliminated previously granted forbearances and that it was applying FIRREA's new capital standards to all thrifts, including those with forbearance agreements.[3] *See Winstar–Related Cases*, 37 Fed. Cl. at 185. The court reasoned that the regulations themselves prohibited the thrifts from including millions of dollars worth of supervisory goodwill that their agreements expressly allowed them to include as capital. *See id.* The court rejected the government's argument that the plaintiffs' claims accrued when FIRREA was enacted on August 9, 1989, *see id.* at 184; it also rejected the plaintiffs' argument that their claims did not accrue until the government enforced FIRREA sanctions against the individual thrifts. *See id.* at 185. The court thus denied the government's motion to dismiss the suits brought by those plaintiffs who filed claims within six years of the date of the regulatory enactment, but granted the motion to dismiss the suits brought by Shane and Ariadne, who filed suit more than six years after the publication date of the OTS bulletin.[4]

Both Ariadne and Shane appealed the dismissals to this court, but Shane's appeal was stayed pending the outcome of Ariadne's appeal. We affirmed the Court of Federal Claims' decision to dismiss Ariadne's suit. *See Ariadne*, 133 F.3d at 876. We found no clear error in the court's determination that

---

1. The "critical aspect" of the accounting method was that it permitted the acquiring thrift to treat the excess of the purchase price over the fair market value of all identifiable assets acquired as "supervisory goodwill." Thrift regulators then permitted acquiring institutions to count supervisory goodwill toward their capital reserve requirements and to amortize the goodwill asset over long periods, up to a forty-year maximum. Some transactions included further capital credit inducements. *See Winstar*, 518 U.S. at 848–53, 116 S.Ct. 2432.

2. *See* Regulatory Capital, 54 Fed.Reg. 46,845 (1989) (codified as amended in various sections of 12 C.F.R.).

3. *See* Office of Thrift Supervision, "Capital Adequacy: Guidance on the Status of Capital and Accounting Forbearances and Capital Instruments Held by a Deposit Insurance Fund," Thrift Bulletin No. 38–2, 1990 WL 309397 at *1 (Jan. 9, 1990).

4. Shane filed suit on February 22, 1996; Ariadne filed on April 16, 1996.

Ariadne, as a stockholder in Southern California Savings & Loan (SoCal), the thrift at issue in that case, should have known that SoCal had lost the use of supervisory goodwill as an asset and that its claim had therefore accrued more than six years before Ariadne filed its breach of contract claim on April 16, 1996. *See id.* at 878. We noted that "SoCal itself was sufficiently certain that it had lost the use of supervisory goodwill that it filed a capital restoration plan on March 2, 1990." *Id.* We held that the government's liability was fixed when it refused to allow use of supervisory goodwill as it had promised, although we did not determine precisely which act—the enactment of the statutory prohibition on the use of supervisory goodwill, the promulgation of regulations enforcing this prohibition, or the issuance of a notice of intent to apply the regulations to thrifts (the Thrift Bulletin)—constituted the government's repudiation and thus the critical date for statute of limitations purposes. *See id.* at 879–80. Nevertheless, we concluded that Ariadne knew or should have known through any of these three government actions that SoCal had lost its supervisory goodwill asset by the time SoCal submitted its OTS capital restoration plan on March 2, 1990. *See id.* at 880. Accordingly, because Ariadne filed suit more than six years after this date, we concluded that its suit was barred by 28 U.S.C. § 2501. *See id.* We lifted the stay of Shane's appeal after the *Ariadne* decision issued and we now consider its merit. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

Since we are bound by our precedent in *Ariadne*, the only issue before us is whether that case controls the disposition of Shane's appeal. Shane does not attempt to distinguish the circumstances of this case from those in *Ariadne*. Instead, Shane et al. vigorously maintain that their claim did not accrue until the government rejected Mercury's capital restoration plan on February 22, 1990, because until then any damages they suffered as shareholders were not "cognizable," but speculative and therefore uncompensable.

The government submits that *Ariadne* permits no result other than affirmance of the Court of Federal Claims's dismissal of Shane's claim because, regardless which of the three specific governmental acts constituted the breach of contract with Mercury Savings, Shane et al. filed suit more than six years after all three dates, and thus, like Ariadne, they knew or should have known that the thrift in which they held stock lost its supervisory goodwill asset by the time that the thrift submitted its capital restoration plan to OTS on January 15, 1990.

We agree with the government that this case is governed by *Ariadne*. We considered and rejected Shane's argument in *Ariadne*. Specifically, we rejected the contention that Ariadne's claim did not accrue until the government took individualized action against SoCal. In *Ariadne* we concluded that Ariadne's claim accrued before the government imposed restrictions on SoCal's business activities because any of the government's actions asserted to be a breach damaged SoCal (and hence Ariadne) by depriving SoCal of its supervisory goodwill asset. SoCal's filing of its capital restoration plan merely evidenced its knowledge of that damage. *See Ariadne*, 133 F.3d at 878. *Ariadne* therefore requires us to conclude similarly that Shane's claim for breach of contract accrued when the government repudiated its forbearance agreement with Mercury, which repudiation occurred by means of each of the three government actions—the enactment of FIRREA, the promulgation of implementing regulations, or the publication of the bulletin reminding thrifts with forbearance agreements that OTS was applying the regulations to them—all of which occurred prior to the date on which Mercury submitted its capital plan on January 15, 1990, and more than six years before Shane et al. filed their breach of contract claim.

Even stronger authority than *Ariadne* for our reaching this result is the *Winstar* case itself. In *Winstar*, the Supreme Court clearly stated that the government became liable for breach of contract when the law changed, not when it seized thrifts for regulatory noncompliance. Specifically, the Court stated:

When the law as to capital requirements changed, ... the Government was unable to perform its promise and, therefore became liable for breach. We accept the Federal Circuit's conclusion that the Government breached these contracts when, pursuant to the new regulatory capital requirements imposed by FIRREA, ... the federal regulatory agencies limited the use of supervisory goodwill and capital credits in calculating respondent's net worth.... In the case of Winstar and Statesman, *the Government exacerbated its breach when it seized the liquidated respondents' thrifts for regulatory noncompliance.*

*Winstar,* 518 U.S. at 870, 116 S.Ct. at 2452–53 (emphasis added). This holding compels us to conclude that the statute of limitations for both Ariadne's and Shane's claims began to run before the government took individual action against their thrifts. Although the Supreme Court did not clearly decide whether the breach occurred when the FIRREA was enacted or when the regulations, which have the force of law, became effective, or when the OTS bulletin, which clearly informed thrifts that they were subject to these regulations, was published, all three of these dates predate by more than six years the filing of Shane's breach of contract claim against the government.

Shane et al. also argue that the trial court erroneously rejected the continuing claim and stabilization doctrines as bases for postponing the accrual of their claim. We considered and rejected the application of these doctrines in *Ariadne,* and we see no basis for concluding otherwise here. *See Ariadne,* 133 F.3d at 879.

It does seem clear from the fact that Shane et al. filed their claim on February 22, 1996, precisely six years after the government's rejection of Mercury's capital restoration plan, that they relied on that date as the critical date for statute of limitations purposes. Unfortunately for Shane, their reliance on that date was erroneous. The material facts in this case are indistinguishable from those in *Ariadne,* and that case does not permit a different outcome here.

For the foregoing reasons, the United States Court of Federal Claims's dismissal of Shane's claim against the government for breach of contract is

*AFFIRMED.*