MAYER, Circuit Judge,
dissenting.
Despite more than a decade and a half of Winstar litigation, this is the first time we must decide with such precision when a thrift’s breach of contract claim accrues under the 28 U.S.C. § 2501 * statute of limitations. In my view, the August 9, 1989, enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183 (“FIRREA”), caused Bank of America, FSB (“BoA”)’s claim to accrue. And it certainly accrued no later than September 22, 1989, based on individualized regulatory action taken by the Office of Thrift Supervision (“OTS”) against BoA during August and September 1989. Accordingly, BoA failed to timely file in the Court of Federal Claims. Because its petition must, therefore, be dismissed for lack of jurisdiction, see, e.g., John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed.Cir.2006), cert. granted, — U.S. -, 127 S.Ct. 2877, 167 L.Ed.2d 1151 (2007) (the six-year limitations period under 28 U.S.C. § 2501 is jurisdictional); Frazer v. United States, 288 F.3d 1347, 1351 (Fed.Cir.2002) (same), I dissent.
In determining when BoA’s claim accrued, we are guided by United States v. Winstar Corp., 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), in which the Supreme Court said: “When the law as to capital requirements changed in the present instance, the Government was unable to perform its promise and, therefore, became liable for breach.” Id. at 870, 116 S.Ct. 2432 (emphasis added). The Court further stated that “the Government breached these contracts when, pursuant to the new regulatory capital requirements imposed by FIRREA, 12 U.S.C. § 1464(t), the federal regulatory agencies limited the use of supervisory goodwill and capital credits in calculating respondents’ net worth.” Id. This language compels the conclusion that the government breached its contracts with the thrifts when it enacted FIRREA, but we have yet to so hold. See Shane v. United States, 161 F.3d 723, 727 (Fed.Cir.1998).
Indeed, until now, in cases where the Court of Federal Claims’ jurisdiction was at issue, the claimants had always filed suit more than six years after any of the three generalized governmental actions that might have triggered the statute of limitations: enactment of FIRREA (Aug. 9, 1989); promulgation of implementing regulations (Dec. 7, 1989); and publication of an OTS bulletin reminding thrifts with forbearance agreements that it was applying the regulations against them (Jan. 9,1990). See, e.g., Shane, 161 F.3d 723; Ariadne Fin. Servs. Pty. Ltd. v. United States, 133 F.3d 874 (Fed.Cir.1998). Therefore, in reviewing the trial court’s dismissals, it was unnecessary to specify which event first triggered, the running of the limitations period, and we declined to do so. Shane, 161 F.3d at 726-27; Ariadne, 133 F.3d at *1376 880. Here, however, the issue is squarely before us, because BoA filed suit on September 29, 1995 — more than six years after the enactment of FIRREA, but fewer than six years after promulgation of the implementing regulations.
In determining whether FIRREA’s enactment, without more, caused BoA’s claim to accrue, we look to what the government promised and whether FIRREA itself effected a breach of that promise to any extent. See Franconia Assocs. v. United States, 586 U.S. 129, 141-43, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (“When performance of a duty under a contract is due[,] any non-performance is a breach.”) (quoting Restatement (Second) of Contracts § 235(2) (1979)); Kinsey v. United States, 852 F.2d 556, 558 (Fed.Cir.1988). In other words, once BoA was denied use of its supervisory goodwill or any other element of its agreement, its claim for breach accrued, and subsequent denials did not give rise to new or additional claims. Ariadne, 133 F.3d at 879; see also Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. -, 127 S.Ct. 2162, 2169, 167 L.Ed.2d 982 (2007); Winstar, 518 U.S. at 870, 116 S.Ct. 2432. Moreover, individualized regulatory action against BoA was not necessary to trigger the statute of limitations, Shane, 161 F.3d at 726; a generalized governmental action, like FIRREA, is sufficient. Id.
Under BoA’s 1986 contract, the government agreed, inter alia, that BoA had the right to count supervisory goodwill, amortized over a 25-year period, toward its regulatory capital requirements, and that for a 10-year period it could operate under less stringent regulatory capital requirements than those generally applicable to thrifts. Bank of Am., FSB v. United States, 51 Fed.Cl. 500, 503 (2002) (“Bank of America 7”). FIRREA constitutes a breach, and not merely an anticipatory repudiation, see Franconia, 536 U.S. at 142-43, 122 S.Ct. 1993, because it brought the government into immediate noncompliance with the full scope of its obligations under its agreement with BoA.
The act mandated that the government could not provide BoA with special regulatory treatment for the entirety of the 10 and 25-year terms. The government’s promise did not merely provide special treatment at a given moment (e.g., August 9, 1989), but it also encompassed a guarantee to so provide from that moment on, for the remaining balance of the agreed upon term (e.g., for 7 and 22 years beyond 1989). Even if the act did not immediately raise the specter of sanctions or enforcements actions, it meant that as of August 9, 1989, the government necessarily, by statutory obligation, viewed the promised supervisory goodwill, etc., as no longer fully available, at least for business or acquisition purposes taking place after December 7, 1989 (the latest date on which OTS’ implementing regulations could be made effective). This effected a breach of the contract as of August 9, 1989, because such a limited view of the available uses of BoA’s supervisory goodwill, etc., was contrary to the government’s agreement that the special capital would count “as capital for all purposes.” Trial Tr. at A500109. The error in Plaintiffs in Winstar-Related Cases v. United States, 37 Fed.Cl. 174 (Ct.Cl.1997), was the failure to appreciate the forward-looking aspects of the government’s promise and FIRREA’s immediate impact on them.
This understanding of the contract is consistent with Franconia, 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132. There, the government’s contractual obligation was to accept pre-payment when tendered on government-provided mortgages. Id. at 142-43, 122 S.Ct. 1993. This meant that the government’s performance was not due until payment was tendered, and the stat *1377 ute there at issue could serve only as an anticipatory repudiation. Id. at 143, 122 S.Ct. 1993. Here, by contrast, the government’s obligation was continuous for the life of the agreement and not contingent upon any act by BoA. However minor FIRREA’s immediate breach may appear, promulgation of the implementing regulations, the OTS bulletin, and pre-December 7, 1989, individualized regulatory action against BoA did nothing more than exacerbate that breach. See Winstar, 518 U.S. at 870, 116 S.Ct. 2432. Therefore, they could not have caused BoA’s claim to first accrue. See Ariadne, 133 F.3d at 879. Moreover, this understanding of when the breach occurred comports with the general principle that waivers of sovereign immunity and statutes of limitations are construed narrowly. See, e.g., BP Am. Prod. Co. v. Burton, -U.S.-, 127 S.Ct. 638, 646, 166 L.Ed.2d 494 (2006); United States v. Dalm, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); Fannie Mae v. United States, 469 F.3d 968, 973 (Fed.Cir. 2006); John R. Sand & Gravel, 457 F.3d at 1355. Therefore, because BoA’s claim accrued on August 9, 1989, its September 29,1995, filing was untimely.
Even under the majority’s theory of accrual, BoA still failed to timely file. The majority does not address whether FIR-REA itself effected a breach. Ante at 1371-72. Instead, it agrees with the trial court’s conclusion that the October 6, 1989, letter, requiring BoA to comply with certain FIRREA capital requirements before it would approve the acquisition of First Nationwide branches, was sufficiently contrary to the government’s contract with BoA to constitute a breach. Ante at 1372. Accordingly, it recognizes that individualized regulatory activity before December 7, 1989 (the effective date of FIRREA’s implementing regulations) can trigger the statute of limitations. But it does not properly apply this standard; certain preSeptember 29, 1989, regulatory activity violated the government’s agreement with BoA.
On August 31, 1989, OTS issued a bulletin that required BoA to describe in future securities filings how it intended to raise capital to satisfy FIRREA’s requirements. Bank of America I, 51 Fed.Cl. at 505. Also on August 31, OTS notified BoA that it was postponing its decision on the First Nationwide acquisition based on the “significant issue of law or policy regarding whether [OTS] should permit an institution not meeting the tangible capital requirement of [FIRREA] to increase its insured deposits through a branch purchase.” Id. at 507. But for this postponement, the acquisition would have been automatically approved on September 5, 1989, and the government provided no reason for the delay other than FIRREA. Id. Moreover, a September 22, 1989, OTS memorandum evinces the government’s intent not to approve the First Nationwide acquisition without a capital infusion, A400517-18; an infusion that would have been unnecessary but for FIRREA, and was contrary to the government’s promises under its contract with BoA. Taken together, these actions show that before September 29, 1989, the government was actively regulating BoA in a manner inconsistent with its promises under the contract, and was, therefore, liable for breach. Accordingly, BoA’s claim could not have first accrued on October 6, 1989, because the letter from that date merely provided further confirmation of that which should have already been abundantly clear.

 28 U.S.C. § 2501 provides in pertinent part:
Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.