

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-28-2006

# USA v. Jones

Precedential or Non-Precedential: Precedential

Docket No. 05-4898

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Jones" (2006). *2006 Decisions.* Paper 4.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/4

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-4898
_____

UNITED STATES OF AMERICA

v.

AIMEE JONES,

Appellant

_____

Appeal from the
United States District Court for the
Western District of Pennsylvania
(D.C. No. 04-cr-00317)
District Judge: The Honorable Alan N. Bloch

_____

Argued on September 27, 2006
_____

Before: MCKEE and AMBRO, Circuit Judges, and
RESTANI*, Judge

(Filed: December 28, 2006)

_____

    *Honorable Jane A. Restani, Chief Judge of the United
States Court of International Trade, sitting by designation.

Lisa B. Freeland, Esquire
Federal Public Defender
Renee Pietropaolo, Esquire (Argued)
Assistant Federal Public Defender
Karen S. Gerlach, Esquire
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222

      Counsel for Appellant

Mary Beth Buchanan, Esquire
United States Attorney
Robert L. Eberhardt, Esquire (Argued)
Executive Assistant United States Attorney
Chief, Criminal Appeals
Laura S. Irwin, Esquire
Office of the United States Attorney
700 Grant Street
Suite 400
Pittsburgh, PA 15219

      Counsel for Appellee

_____

OPINION OF THE COURT
_____

RESTANI, <u>Judge</u>.

Aimee Jones ("Jones") appeals her conviction for health care fraud in violation of 18 U.S.C. § 1347(2), arguing that the Government did not establish the essential elements of the crime. Jones also contests her sentence, including the requirement to make restitution to her former employer, Progressive Medical Specialists, Inc. ("Progressive"). We hold that the Government did not establish the elements of health care fraud in violation of § 1347(2) and we will reverse Jones'

2

conviction and vacate her sentence.

## I. Procedural and Factual Background

In February 2001, Jones began working at a methadone clinic operated by Progressive and located on Smallman Street in Pittsburgh, Pennsylvania. The clinic provided methadone treatments to clients in exchange for a fee. The clinic did not accept insurance and on Mondays clients generally paid cash for a week's worth of services.

At the clinic, Jones worked as one of the front counter clerks, performing light clerical tasks. She was stationed at the front of the clinic, signing in clients as they arrived and collecting payments from them. After signing them in, she would indicate on the sign-in sheet and the computer records whether the client had paid and the method of payment.[1] During Monday mornings, Jones or another front counter clerk would count the cash received alone in the back office of Annamarie Roberto, project director of the clinic. A clerk would then go to the bank to make a deposit. Later in the afternoon, a clerk would make a second bank deposit.[2] At the end of the day, Jones and the other clerks would reconcile the amount indicated as received on the sign-in sheets with the amount indicated as received in the computer. They did not reconcile the amount received with the amount deposited.

In March 2004, Roberto noticed that there was a discrepancy between the amount indicated as received on the sign-in sheets and the computer records and the amount listed as deposited on the deposit slips. She then analyzed the financial records from February 2000 to March 2004 and discovered a discrepancy of $451,000 between the amount received and the

---

[1]After paying for the weekly services, the clients would proceed to the nurse's station to receive their dose of methadone.

[2]During the rest of the week, only one deposit would be made per day.

amount deposited. After checking the dates on which the discrepancies occurred, she found that they occurred on the majority of the days on which Jones worked alone and did not occur when Jones was absent from work.

Subsequent investigations revealed that from August 23, 2001 to August 20, 2004, Jones had deposited $144,680 in cash into her and her husband's bank account, despite the fact that their joint gross income from 2001 to 2003 was less than $40,000 each year.[3] Investigations also revealed that they had made several large cash purchases in 2003 and 2004 totaling $55,036.25.

After the investigations, Jones was indicted on one count of health care fraud in violation of 18 U.S.C. § 1347(2). A jury found her guilty and the District Court sentenced her to twenty-four months of imprisonment. The Court also imposed three years of supervised release, ordered restitution to Progressive for $240,076.33, and ordered forfeiture of $199,716.25 and a 2003 Honda motorcycle.

On appeal, Jones argues that the Government did not establish the elements of health care fraud in violation of § 1347(2) because the purported theft was not committed in connection with the delivery or payment of health care benefits, and because Progressive was not a health care benefit provider. Jones also challenges her sentence, arguing that the District Court did not give meaningful consideration to factors set forth in 18 U.S.C. § 3553(a). Jones further claims that the Court committed multiple errors when it ordered Jones to pay restitution to Progressive. We agree that the Government has not established the elements of a § 1347(2) violation and we do not reach the remainder of Jones' arguments.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291 to review

---

[3]The record does not indicate Jones and her husband's joint gross income in 2004.

4

Jones' claim that the Government did not establish the elements of 18 U.S.C. § 1347(2).

Because Jones did not raise the issue of whether the Government established the elements of health care fraud in violation of § 1347(2) in district court, we review for plain error. United States v. Gaydos, 108 F.3d 505, 509 (3d Cir. 1997). Under plain error review, the appellate court can correct an error not raised at trial if there is (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Cotton, 535 U.S. 625, 631 (2002) (citing Johnson v. United States, 520 U.S. 461, 466–67 (1997)). We have held previously that "affirming a conviction where the government has failed to prove each essential element of the crime beyond a reasonable doubt 'affect[s] substantial rights,' and seriously impugns 'the fairness, integrity and public reputation of judicial proceedings.'" Gaydos, 108 F.3d at 509 (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

### III. Discussion

At issue here is whether the Government established the elements of health care fraud in violation of § 1347(2) by Jones. Section 1347(2) states:

Health care fraud

Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--

. . .

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347(2).

In construing the elements of the statute, we begin with the language of the statute because "the ordinary meaning of that language accurately expresses the legislative purpose." Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985). If the "language of a statute is clear . . . the text of the statute is the end of the matter." Steele v. Blackman, 236 F.3d 130, 133 (3d Cir. 2001). "[I]f the language is unclear, we attempt to discern Congress' intent using the canons of statutory construction." United States v. Cooper, 396 F.3d 308, 310 (3d Cir. 2005).

Here, Jones argues that the Government did not establish the elements of a § 1347(2) violation because "[t]he purported theft occurred only after the health care benefit was paid for and delivered," and thus the purported theft was not "in connection with the delivery of or payment for health care benefits." Appellant's Br. 20. In contrast, the Government argues that "a fraudulent taking from a health care provider who is providing a public or private plan or program is more than a theft from a cash register" because the money allegedly taken by Jones was intended to pay for a health care benefit program administered by Progressive. Appellee's Br. 16. We disagree with the Government and hold that it did not establish a violation of 18 U.S.C. § 1347(2) because it did not show that Jones used false or fraudulent pretenses, representations, or promises to obtain money or property from Progressive in connection with the delivery of, or payment for, health care benefits, items, or services.[4]

The plain language of the statute clearly prohibits health care fraud by knowingly or willfully using "false or fraudulent pretenses, representations, or promises" to obtain the money or property of a health care benefit program in connection with the delivery of, or payment for, health care benefits, items, or services. See 18 U.S.C. § 1347(2). As we discussed in Nugent v. Ashcroft, 367 F.3d 162, 170 (3d Cir. 2004), fraud is

---

[4]In so holding, we do not reach the issue of whether Progressive is a health care benefit program under 18 U.S.C. § 24(b), though we may refer to it as such.

differentiated from theft. Under the common law and the Model Penal Code, theft is synonymous to larceny – the taking of another's property by trespass with intent to deprive permanently the owner of the property. Id. at 171. Fraud, which did not exist at common law, "means to cheat or wrongfully deprive another of his property by deception or artifice," id. at 178 (quoting United States v. Thomas, 315 F.3d 190, 200 (3d Cir. 2002)), and "implies deceit, deception, artifice, trickery," id. at 177 (citations and quotations omitted).[5]

Here, the Government did not establish health care fraud. Rather, the Government established only that: (1) from February 2000 to March 2004, the amount deposited into Progressive's bank account was $451,000 less than the amount received from clients; (2) the discrepancies between the amount received and the amount deposited occurred on the majority of the days on which Jones worked alone and did not occur when Jones was absent from work; (3) Jones was one of the employees that made bank deposits; and (4) Jones had made cash deposits to her bank account and cash expenditures exceeding her wages. The Government has not established, nor did it seek to establish, any type of misrepresentation by Jones in connection with the delivery of, or payment for, health care benefits, items, or services.

At oral argument, the Government claimed that Jones obtained the money from Progressive through a false promise. It argued that in accepting her responsibilities as a front counter clerk, Jones implicitly promised to deposit the full amount received by Progressive into its bank account. Essentially, the Government is arguing that every employee makes an implicit

---

[5]Note that we look to common law definitions where, as here, "federal criminal statutes use words of established meaning without further elaboration." Nugent, 367 F.3d at 170 (quoting Moskal v. United States, 498 U.S. 103, 114 (1990)); Gilbert v. United States, 370 U.S. 650, 655 (1962).

promise not to steal from the employer.[6]

The Government has stretched the statute to cover activity beyond its plain words. There was simply no type of misrepresentation made in connection with the delivery of, or payment for, health care benefits, items or services. There is no allegation that Jones said or did anything that affected the delivery of, or payment for, health care benefits, items, or services. The services were already properly paid for when Jones failed to deposit all of the money collected, and instead kept it.

Further, if there were any ambiguity as to whether the plain words of § 1347 covered the activity here, the canons of construction clearly indicate that they do not. First, the Government's reading of § 1347 is inconsistent with the statutory scheme of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), under which § 1347 was passed. See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme . . . . A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' . . . and fit, if possible, all parts into an harmonious whole . . . .") (citations and quotations omitted); Nugent, 367 F.3d at 170 (For ambiguous terms, "courts should look to the reading that 'best accords with the overall purposes of the statute' . . . .") (quoting Moskal, 498 U.S. at 116–17)). The Act's purpose was to "combat waste, fraud, and abuse in health insurance and health care delivery." HIPAA, Pub. L. No. 104-191, 110 Stat. 1936. Accordingly, the Whited Court also noted that the Act targeted abuse of insurance payments through two statutorily distinct clauses – one for fraud (18 U.S.C. § 1347), and one for theft (18

---

[6]The Government also argues that the deposit slip was a misrepresentation. In fact, there is no indication that the deposit slip did not represent accurately the amount deposited. The deposit slip argument is essentially the same argument as the employee's implicit promise argument, which we reject.

U.S.C. § 669)[7] – which carry the same penalties. United States v. Whited, 311 F.3d 259, 268–70 (3d Cir. 2002) (citing HIPAA, Pub. L. No. 104-191, 110 Stat. 1936). Given that Congress passed an accompanying statute that explicitly covers theft, it cannot be the case that Congress intended § 1347 to be interpreted so broadly as to convert an instance of simple theft into health care fraud merely because the theft was perpetrated by an employee of a health care benefit program.

Second, were we to read § 1347 so broadly as to cover simple theft by an employee, § 669 itself would be rendered "insignificant, if not wholly superfluous." Cooper, 396 F.3d at 312. Courts "construe statutory language to avoid interpretations that would render any phrase superfluous." Id. (citing TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.")); Ki Se Lee v. Ashcroft, 368 F.3d 218, 223 (3d Cir. 2004) ("We start with the principle that if at all possible, we should adopt a construction which recognizes each element of the statute."); Acceptance Ins. Co. v. Sloan, 263 F.3d 278, 283 (3d Cir. 2001) ("It is an axiom of statutory construction that whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage."). If a phrase, clause, sentence, or word is not to be rendered superfluous, surely a simultaneously enacted statute should not suffer such a fate.

---

[7]18 U.S.C. § 669 provides in relevant part:

Whoever knowingly and willfully embezzles, steals, or otherwise without authority converts to the use of any person other than the rightful owner, or intentionally misapplies any of the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 669.

Finally, in a criminal case, a corollary principle to the rule of lenity instructs us to "give[] precedence to the terms of the more specific statute where a general statute and a specific statute speak to the same concern." Simpson v. United States, 435 U.S. 6, 15 (1978), superseded by statute, Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1005(a), 98 Stat. 2138–39, as recognized in United States v. Manna, 92 F. App'x 880, 885 (3d Cir. 2004). Here, § 669 is the more specific statute, as it directly addresses theft from a health care benefit program while § 1347 addresses fraud in connection with the delivery of, or payment for, health care benefits, items, or services.[8] Section 1347 is simply not the proper statute under which Jones should have been charged.

For the foregoing reasons, the Government has not established that Jones committed health care fraud in violation of 18 U.S.C. §1347(2).

---

[8]For instance, § 669 has been used to indict criminal activity similar to that at issue in this case. See Whited, 311 F.3d at 261 (upholding the indictment of a receptionist of a chiropractic center for one count of embezzlement or theft under § 669 for depositing payments received from the center's clients into her personal bank account). Meanwhile, § 1347 has been used to address instances of misrepresentation in connection with the delivery of, or payment for, health care benefits, items, or services. See United States v. Lucien, 347 F.3d 45, 52 (2d Cir. 2003) (upholding defendant's conviction for staging automobile accidents which resulted in insurance companies being billed for medical services not received); United States v. Hickman, 331 F.3d 439, 441 (5th Cir. 2003) (concerning defendant's conviction for billing Medicare, Medicaid, and private insurance companies for durable medical equipment that was never ordered, and for health care services that never occurred); United States v. Baldwin, 277 F. Supp. 2d 67, 69 (D.D.C. 2003) (upholding defendant's indictment for submitting false invoices to a health care provider).

## IV. Conclusion

Accordingly, because the Government has not established health care fraud in violation of 18 U.S.C. § 1347(2), we will REVERSE the judgment of conviction and VACATE Jones' sentence.