(Slip Opinion) OCTOBER TERM, 2006 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BP AMERICA PRODUCTION CO., SUCCESSOR IN INTEREST TO AMOCO PRODUCTION CO., ET AL. *v.* BURTON, ACTING ASSISTANT SECRETARY, LAND AND MINERALS MANAGEMENT, DEPARTMENT OF THE INTERIOR, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 05–669.   Argued October 4, 2006—Decided December 11, 2006

After the Interior Department's Minerals Management Service (MMS) issued administrative orders assessing petitioners for royalty underpayments on gas leases they held on Government lands, petitioners filed an administrative appeal, contending, *inter alia,* that the proceedings were barred by 28 U. S. C. §2415(a), which provides in relevant part: "[E]very *action for money damages* brought by the United States or an . . . agency thereof which is founded upon any contract . . . , shall be barred unless *the complaint* is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings." (Emphasis added.)  The Assistant Secretary of the Interior denied the appeals, ruling that §2415(a) did not govern the administrative order. The District Court agreed, and the Court of Appeals affirmed.

*Held:* Section 2415(a)'s 6-year statute of limitations applies only to court actions, not to the administrative payment orders involved in this case.  Pp. 5–16.

  (a) Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.  Read in this way, §2415(a)'s text is quite clear: Its key terms—"action" and "complaint"—are ordinarily used in connection with judicial, not administrative, proceedings.  See, *e.g., Unexcelled Chem. Corp.* v. *United States*, 345 U. S. 59, 66.  The phrase "action for money damages" reinforces this reading because the term "damages" is generally used to

mean pecuniary compensation or indemnity recovered in court. Moreover, the fact that §2415(a) distinguishes between judicial and administrative proceedings by providing that an "action" must commence "within one year after final decisions have been rendered in applicable administrative proceedings" shows that Congress knew how to identify administrative proceedings and manifestly had two separate concepts in mind when it enacted §2415(a).  Pp. 5–6.

(b) Petitioners' assertion that §2415(a)'s term "action" is commonly used to refer to administrative, as well as judicial, proceedings, is not persuasive.  The numerous statutes and regulations cited to document this supposed usage actually undermine petitioners' argument, since none of them uses the term "action" standing alone to refer to administrative proceedings.  Rather, each includes a modifier, referring to an "administrative action," a "civil or administrative action," or "administrative enforcement actions."  Section 2415(a)'s references to "*every* action for money damages" founded upon "*any* contract" (emphasis added) do not assist petitioners, as they do not broaden the ordinary meaning of the key term "action."  *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 478 U. S. 546, and *West* v. *Gibson*, 527 U. S. 212, distinguished.  Pp. 6–9.

(c) Petitioners' suggestion that an MMS payment order constitutes a "complaint" under §2415(a) is also rejected.  Their examples of statutes and regulations employing the term "complaint" in the administrative context are unavailing, since such occasional usage of the term does not alter its primary meaning, which concerns the initiation of a civil action.  Moreover, an MMS payment order lacks the essential attributes of a complaint, which is a filing that commences a proceeding that may result in a legally binding order providing relief.  In contrast, an MMS order in and of itself imposes a legal obligation on the party to which it is issued.  Given that the failure to comply with such an order can result in fines of up to $10,000 a day, see 30 U. S. C. §1719(c), the order plays an entirely different role from that of a "complaint."  Pp. 9–10.

(d) Any remaining doubts are erased by the canon that statutes of limitations are construed narrowly against the government.  This canon is rooted in the traditional rule that time does not run against the King.  A corollary of this rule is that a sovereign that elects to subject itself to a statute of limitations is given the benefit of the doubt if the statute's scope is ambiguous.  *Bowers* v. *New York & Albany Lighterage Co.*, 273 U. S. 346, distinguished.  Pp. 10–11.

(e) The Court disagrees with petitioners' argument that interpreting §2415(a) as applying only to judicial actions renders §2415(i)— which specifies that "[t]he provisions of this section shall not prevent the United States . . . from collecting any claim . . . by means of ad-

ministrative offset"—superfluous in contravention of the canon against reading a statute in a way that makes part of it redundant. Under the Court's interpretation, §2415(i) is not mere surplusage, but clarifies that administrative offsets are not covered by §2415(a) even if they are viewed as an adjunct of a court action. To accept petitioners' argument, on the other hand, the Court would have to hold either that §2415(a) applied to administrative actions when it was enacted in 1966 or that it was extended to reach administrative actions when §2415(i) was added in 1982. The clear meaning of §2415(a)'s text, which has not been amended, refutes the first of these propositions, and accepting the latter would require the unrealistic conclusion that in 1982 Congress proceeded to enlarge §2415 to cover administrative proceedings by the oblique and cryptic route of inserting text expressly excluding a single administrative vehicle from the statute's reach. Pp. 11–14.

   (f) Although interpreting §2415(a) as applying only to judicial actions may result in certain peculiarities, petitioners' alternative interpretation would itself result in disharmony. For instance, MMS oil and gas lease payment orders are now prospectively subject to a 7-year statute of limitations except with respect to obligations arising out of leases of Indian land. 30 U. S. C. §1724(b)(1). Given the exhortation that the Interior Secretary "aggressively carry out his trust responsibility in the administration of Indian oil and gas," §1701(a)(4), it seems unlikely that Congress intended to impose a shorter, 6-year statute of limitations for payment orders regarding Indian lands. Finally, while cogent, petitioners' policy arguments as to why limiting §2415(a) to judicial actions frustrates the statute's purposes must be viewed in perspective. For example, because there are always policy arguments against affording the sovereign special treatment, the relevant inquiry in a case like this is simply how far Congress meant to go when it enacted the statute of limitations in question. Prior to §2415(a)'s enactment, Government contract actions were not subject to any statute of limitations. See *Guaranty Trust Co.* v. *United States*, 304 U. S. 126, 132. Absent congressional action changing this rule, it remains the law, and §2415(a) betrays no intent to change the rule as it applies to administrative proceedings. Pp. 14–16.

410 F. 3d 722, affirmed.

   ALITO, J., delivered the opinion of the Court, in which all other Members joined, except ROBERTS, C. J., and BREYER, J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 05–669

———————

BP AMERICA PRODUCTION COMPANY, SUCCESSOR IN INTEREST TO AMOCO PRODUCTION COMPANY, ET AL., PETITIONERS *v.* REJANE BURTON, ACTING ASSISTANT SECRETARY, LAND AND MINERALS MANAGEMENT, DEPARTMENT OF THE INTERIOR, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[December 11, 2006]

JUSTICE ALITO delivered the opinion of the Court.

This case presents the question whether administrative payment orders issued by the Department of the Interior's Minerals Management Service (MMS) for the purpose of assessing royalty underpayments on oil and gas leases fall within 28 U. S. C. §2415(a), which sets out a 6-year statute of limitations for Government contract actions. We hold that this provision does not apply to these administrative payment orders, and we therefore affirm.

I

A

The Mineral Leasing Act of 1920 (MLA) authorizes the Secretary of the Interior to lease public-domain lands to private parties for the production of oil and gas. 41 Stat. 437, as amended, 30 U. S. C. §181 *et seq.* MLA lessees are obligated to pay a royalty of at least "12.5 percent in amount or value of the production removed or sold from

the lease." §226(b)(1)(A).

In 1982, Congress enacted the Federal Oil and Gas Royalty Management Act (FOGRMA), 96 Stat. 2447, as amended, 30 U. S. C. §1701 *et seq.*, to address the concern that the "system of accounting with respect to royalties and other payments due and owing on oil and gas produced from such lease sites [was] archaic and inadequate." §1701(a)(2). FOGRMA ordered the Secretary of the Interior to "audit and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted." §1711(c)(1). The Secretary, in turn, has assigned these duties to the MMS. 30 CFR §201.100 (2006).

Under FOGRMA, lessees are responsible in the first instance for the accurate calculation and payment of royalties. 30 U. S. C. §1712(a). MMS, in turn, is authorized to audit those payments to determine whether a royalty has been overpaid or underpaid. §§1711(a) and (c); 30 CFR §§206.150(c), 206.170(d). In the event that an audit suggests an underpayment, it is MMS'[1] practice to send the lessee a letter inquiring about the perceived deficiency. If, after reviewing the lessee's response, MMS concludes that the lessee owes additional royalties, MMS issues an order requiring payment of the amount due. Failure to comply with such an order carries a stiff penalty: "Any person who—(1) knowingly or willfully fails to make any royalty payment by the date as specified by [an] order . . . shall be liable for a penalty of up to $10,000 per violation for each day such violation continues." 30 U. S. C. §1719(c). The Attorney General may enforce these orders in federal court. §1722(a).

An MMS payment order may be appealed, first to the

---

[1] MMS is not always the auditing body, as MMS may delegate its authority to the host State or an Indian tribe. 30 U. S. C. §§1732, 1735.

Director of MMS and then to the Interior Board of Land Appeals or to an Assistant Secretary. 30 CFR §§290.105, 290.108. While filing an appeal does not generally stay the payment order, §218.50(c), MMS will usually suspend the order's effect after the lessee complies with applicable bonding or financial solvency requirements, §243.8.

Congress supplemented this scheme by enacting the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (FOGRSFA), 110 Stat. 1700, as amended, 30 U. S. C. §1701 *et seq.* FOGRSFA adopted a prospective 7-year statute of limitations for any "judicial proceeding or demand" for royalties arising under a federal oil or gas lease. §1724(b)(1). The parties agree that this provision applies both to judicial actions ("judicial proceeding[s]") and to MMS' administrative payment orders ("demand[s]") arising on or after September 1, 1996. *Ibid.* This provision does not, however, apply to judicial proceedings or demands arising from leases of Indian land or underpayments of royalties on pre-September 1, 1996, production. FOGRSFA §§9, 11, 110 Stat. 1717, notes following 30 U. S. C. §1701.

There is no dispute that a lawsuit in court to recover royalties owed to the Government on pre-September 1, 1996, production is covered by 28 U. S. C. §2415(a), which sets out a general 6-year statute of limitations for Government contract actions. That section, which was enacted in 1966, provides in relevant part:

"Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every *action for money damages* brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless *the complaint* is filed within six years after the right of action accrues or within one year after final decisions have been rendered in appli-

cable administrative proceedings required by contract or by law, whichever is later." (Emphasis added.)

Whether this general 6-year statute of limitations also governs MMS administrative payment orders concerning pre-September 1, 1996, production is the question that we must decide in this case.

B

Petitioner BP America Production Co. holds gas leases from the Federal Government for lands in New Mexico's San Juan Basin. BP's predecessor, Amoco Production Co., first entered into these leases nearly 50 years ago, and these leases require the payment of the minimum 12.5 percent royalty prescribed by 30 U. S. C. §226(b)(1)(A). For years, Amoco calculated the royalty as a percentage of the value of the gas as of the moment it was produced at the well. In 1996, MMS sent lessees a letter directing that royalties should be calculated based not on the value of the gas at the well, but on the value of the gas after it was treated to meet the quality requirements for introduction into the Nation's mainline pipelines.[2] Consistent with this guidance, MMS in 1997 ordered Amoco to pay additional royalties for the period from January 1989 through December 1996 in order to cover the difference between the value of the treated gas and its lesser value at the well.

Amoco appealed the order, disputing MMS' interpretation of its royalty obligations and arguing that the payment order was in any event barred in part by the 6-year statute of limitations in 28 U. S. C. §2415(a). The Assistant Secretary of the Interior denied the appeal and ruled that the statute of limitations was inapplicable.

—————

[2] MMS intended this letter to implement its regulations, which required lessees "to place gas in marketable condition at no cost to the Federal Government unless otherwise provided in the lease agreement." 30 CFR §206.152(i) (1996).

Amoco, together with petitioner Atlantic Richfield Co., sought review in the United States District Court for the District of Columbia, which agreed with the Assistant Secretary that §2415(a) did not govern the administrative order. *Amoco Production Co.* v. *Baca*, 300 F. Supp. 2d 1, 21 (2003). The Court of Appeals for the District of Columbia Circuit affirmed, *Amoco Production Co.* v. *Watson*, 410 F. 3d 722, 733 (2005), and we granted certiorari, 547 U. S. \_\_\_ (2006), in order to resolve the conflict between that decision and the contrary holding of the United States Court of Appeals for the Tenth Circuit in *OXY USA, Inc.* v. *Babbit*, 268 F. 3d 1001, 1005 (2001) (en banc). We now affirm.

## II

### A

We start, of course, with the statutory text. *Central Bank of Denver, N. A.* v. *First Interstate Bank of Denver, N. A.*, 511 U. S. 164, 173 (1994). Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning. *Perrin* v. *United States*, 444 U. S. 37, 42 (1979). Read in this way, the text of §2415(a) is quite clear.

The statute of limitations imposed by §2415(a) applies when the Government commences any "action for money damages" by filing a "complaint" to enforce a contract, and the statute runs from the point when "the right of action accrues." The key terms in this provision—"action" and "complaint"—are ordinarily used in connection with judicial, not administrative, proceedings. In 1966, when §2415(a) was enacted, a commonly used legal dictionary defined the term "right of action" as "[t]he right to bring suit; a legal right to maintain an action," with "suit" meaning "any proceeding . . . in a court of justice." Black's Law Dictionary 1488, 1603 (4th ed. 1951) (hereinafter Black's). Likewise, "complaint" was defined as "the first or

initiatory pleading on the part of the plaintiff in a civil action."[3] *Id.,* at 356. See also *Unexcelled Chemical Corp.* v. *United States*, 345 U. S. 59, 66 (1953) (holding that filing a complaint, in the ordinary sense of the term, means filing a suit in court, not initiating an administrative proceeding; "Commencement of an action by the filing of a complaint has too familiar a history . . . for us to assume that Congress did not mean to use the words in their ordinary sense"). The phrase "action for money damages" reinforces this reading because the term "damages" is generally used to mean "pecuniary compensation or indemnity, which may be recovered *in the courts.*" Black's 466 (emphasis added).

Nothing in the language of §2415(a) suggests that Congress intended these terms to apply more broadly to administrative proceedings. On the contrary, §2415(a) distinguishes between judicial and administrative proceedings. Section 2415(a) provides that an "action" must commence "within one year after final decisions have been rendered in applicable administrative proceedings." Thus, Congress knew how to identify administrative proceedings and manifestly had two separate concepts in mind when it enacted §2415(a).[4]

B

In an effort to show that the term "action" is commonly used to refer to administrative, as well as judicial, proceedings, petitioners have cited numerous statutes and

------

[3] These primary definitions have not changed in substance since 1966. Black's (8th ed. 2004) now defines "action" as "[a] civil or criminal judicial proceeding" and a "complaint" as "[t]he initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief." *Id.,* at 31, 303.

[4] Moreover, it seems unlikely that Congress intended administrative proceedings to commence within one year after the conclusion of administrative proceedings.

regulations that, petitioners claim, document this usage.[5] These examples, however, actually undermine petitioners' argument, since none of them uses the term "action" standing alone to refer to administrative proceedings. Rather, each example includes a modifier of some sort, referring to an "administrative action," a "civil or administrative action," or "administrative enforcement actions." This pattern of usage buttresses the point that the term "action," standing alone, ordinarily refers to a judicial proceeding.

Petitioners contend that their broader interpretation of the statutory term "action" is supported by the reference to "*every* action for money damages" founded upon "*any* contract." 28 U. S. C. §2415(a) (emphasis added). But the broad terms "every" and "any" do not assist petitioners, as they do not broaden the ordinary meaning of the key term "action."

Petitioners argue that their interpretation is supported

——————

[5] See, *e.g.,* 42 U. S. C. §5205(a)(1) (statute of limitations for "administrative action[s] to recover any payment[s] made to a State or local government for disaster or emergency assistance"); 12 U. S. C. §1441a(b)(11)(G) (requiring Resolution Trust Corporation to maintain staff to assist with certain "cases, civil claims, and administrative enforcement actions"); 15 U. S. C. §78u(h)(9)(B) (Securities Exchange Act of 1934 provision noting that certain "[f]inancial records . . . may be disclosed or used only in an administrative, civil, or criminal action"). See also 7 CFR §3018.400(c) (2006) (Department of Agriculture regulation regarding "administrative action[s] for the imposition of a civil penalty" for failure to file disclosure forms); 71 Fed. Reg. 7407 (2006) (to be codified in 12 CFR §1412.2(l)(1)) (Farm Credit System Insurance Corporation regulation defining "prohibited indemnification payment" to include reimbursement for a civil money penalty of judgment resulting from any "administrative or civil action" instituted by the Farm Credit Administration); 10 CFR pt. 820, App. A, IX–b (2006) ("Administrative actions, such as determination of award fees where [Department of Energy] contracts provide for such determinations, will be considered separately from any civil penalties that may be imposed under this Enforcement Policy").

by *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 478 U. S. 546 (1986), and *West* v. *Gibson*, 527 U. S. 212 (1999), but this reliance is misplaced. In *Delaware Valley Citizens' Council*, we construed the attorney's fee provision of the Clean Water Act (CWA), which authorizes a "court, in issuing any final order in any action brought pursuant to subsection (a) of this section, [to] award costs of litigation . . . to any party." 42 U. S. C. §7604(d). We permitted the recovery of fees both for work done in court and in subsequent administrative proceedings. But the pertinent statutory provision in that case did not employ the key terms that appear in the statute at issue here. Specifically, the CWA provision referred to "litigation," not to an "action" commenced by the filing of a "complaint." Moreover, "the work done by counsel [in the administrative phase of the case] was as necessary to the attainment of adequate relief . . . as was all of their earlier work in the courtroom . . . obtaining the consent decree." 478 U. S., at 558. And we expressly reserved judgment on the question "whether an award of attorney's fees is appropriate . . . when there is no connected court action in which fees are recoverable." *Id.,* at 560, n. 5.

*West* helps petitioners even less. There, we considered whether the Equal Employment Opportunity Commission (EEOC) could order a federal agency to pay compensatory damages in an administrative proceeding. Section 717(b) of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e–16(b), authorized the EEOC to employ "appropriate remedies," but did not specifically authorize damages, and §717(c) authorized a subsequent court action against an employer agency, 42 U. S. C. §2000e–16(c). In 1991, Congress added Rev. Stat. §1977A(a)(1), 42 U. S. C. §1981a(a)(1), which provided that "[i]n an action brought by a complaining party under section 706 or 717 . . . the complaining party may recover compensatory . . . damages." In *West*, the defendant agency argued that the

enactment of §1981a(a)(1) showed that Congress did not consider compensatory damages to be "appropriate remedies" in an EEOC proceeding, as opposed to an action brought by an aggrieved employee. If Congress had wished to authorize the award of compensatory damages in an EEOC proceeding, the defendant agency reasoned, Congress would have so provided in §1981a(a)(l), by expressly cross-referencing §717(c). We rejected this argument, but in doing so we did not hold that an EEOC proceeding is an "action" under §1981a(a)(1). Rather, we simply concluded that the EEOC's authorization under §717(b) to award "appropriate remedies" was broad enough to encompass compensatory damages. 527 U. S., at 220–221.

For these reasons, we are not persuaded by petitioners' argument that the term "action" in §2415(a) applies to the administrative proceedings that follow the issuance of an MMS payment order.

C

We similarly reject petitioners' suggestion that an MMS letter or payment order constitutes a "complaint" within the meaning of §2415(a). Petitioners point to examples of statutes and regulations that employ the term "complaint" in the administrative context. See, *e.g.,* 15 U. S. C. §45(b) (requiring the Federal Trade Commission to serve a "complaint" on a party suspected of engaging in an unfair method of competition); 29 CFR §102.15 (2006) (a "complaint" initiates unfair labor practice proceedings before the National Labor Relations Board). But the occasional use of the term to describe certain administrative filings does not alter its primary meaning, which concerns the initiation of "a civil action." Black's 356. Moreover, even if the distinction between administrative and judicial proceedings is put aside, an MMS payment order lacks the essential attributes of a complaint. While a complaint is a

filing that commences a proceeding that may in the end result in a legally binding order providing relief, an MMS payment order in and of itself imposes a legal obligation on the party to which it is issued. As noted, the failure to comply with such an order can result in fines of up to $10,000 a day. An MMS payment order, therefore, plays an entirely different role from that of a "complaint."[6]

### D

To the extent that any doubts remain regarding the meaning of §2415(a), they are erased by the rule that statutes of limitations are construed narrowly against the government. *E. I. DuPont de Nemours & Co.* v. *Davis*, 264 U. S. 456 (1924). This canon is rooted in the traditional rule *quod nullum tempus occurrit regi*—time does not run against the King. *Guaranty Trust Co.* v. *United States*, 304 U. S. 126, 132 (1938). A corollary of this rule is that when the sovereign elects to subject itself to a statute of limitations, the sovereign is given the benefit of the doubt if the scope of the statute is ambiguous.

*Bowers* v. *New York & Albany Lighterage Co.*, 273 U. S. 346 (1927), cited by petitioners, is not to the contrary. There, as here, the issue was the scope of a statute of limitations. The provision in that case, however, provided that "'[n]o suit or proceeding for the collection of any such taxes'" shall commence more than five years after the filing of the return. *Id.,* at 348–349. The Government argued that the terms "proceeding" and "suit" were coterminous, and urged further that any ambiguity should be

---

[6] There was some question at oral argument whether MMS' initial letter might constitute a "complaint" within the meaning of §2415(a). Petitioners did not advance this argument, and recognized at oral argument that neither the statute nor the regulations require the issuance of such a letter. Tr. of Oral Arg. 7–9. The Government, for its part, observed that all such a letter does is request information, as the agency has not yet decided whether to assert a claim. *Id.,* at 28. This is not a complaint.

resolved in its favor.

The Court recognized the canon, restating it much as we have above. *Id.,* at 349. But the Court concluded that the canon had no application in that case because the text of the relevant statute, unlike §2415(a), applied clearly and separately to "suits" and "proceedings," and the Court saw no reason to give these different terms the same meaning. *Id.,* at 349–350.

E

We come now to petitioners' argument that interpreting §2415(a) as applying only to judicial actions would render subsection (i) of the same statute superfluous. Subsection (i) provides as follows:

> "The provisions of this section shall not prevent the United States or an officer or agency thereof from collecting any claim of the United States by means of administrative offset, in accordance with section 3716 of title 31." 28 U. S. C. §2415(i).

An administrative offset is a mechanism by which the Government withholds payment of a debt that it owes another party in order to recoup a payment that this party owes the Government. 31 U. S. C. §3701(a)(1). Thus, under subsection (i), the Government may recover a debt via an administrative offset even if the Government would be time barred under subsection (a) from pursuing the debt in court.

Petitioners argue that, if §2415(a) applies only to judicial proceedings and not to administrative proceedings, there is no need for §2415(i)'s rule protecting a particular administrative mechanism (*i.e.*, an administrative offset) from the statute of limitations set out in subsection (a). Invoking the canon against reading a statute in a way that makes part of the statute redundant, see, *e.g.*, *TRW Inc.* v. *Andrews*, 534 U. S. 19, 31 (2001), petitioners contend that

subsection (i) shows that subsection (a) was meant to apply to administrative, as well as judicial, proceedings. We disagree.

As the Court of Appeals noted, subsection (i) was not enacted at the same time as subsection (a) but rather was added 16 years later by the Debt Collection Act of 1982. 96 Stat. 1749. This enactment followed a dispute between the Office of the Comptroller of the Currency (OCC) and the Department of Justice's Office of Legal Counsel (OLC) over whether an administrative offset could be used to recoup a debt where a judicial recoupment action was already time barred.

In 1978, in response to a question from the United States Civil Service Commission, OLC opined that an administrative offset could not be used to recoup a debt as to which a judicial action was already time barred. OLC reached this conclusion not because it believed that §2415(a) reached administrative proceedings generally,[7] but rather because of the particular purpose of an administrative offset. "Where [a] debt has not been reduced to judgment," OLC stated, "an administrative offset is merely a pre-judgment attachment device." Memorandum from John M. Harmon, Assistant Attorney General, OLC, to Alan K. Campbell, Chairman, U. S. Civil Service Commission Re: Effect of Statute of Limitations on Administrative Collection of United States Claims 3 (Sept. 29, 1978), Joint Lodging. OLC opined that a prejudgment attachment device such as this exists only to preserve funds to satisfy any judgment the creditor subsequently obtains. *Id.,* at 4 (citing cases). OLC therefore concluded that, where a lawsuit is already foreclosed by §2415(a), an administra-

---

[7] Indeed, what emerges strikingly from OLC's 1978 opinion is that no one at the time—neither OLC nor OCC—even contemplated that §2415(a) applied to administrative procedures in the first instance. Nor have petitioners pointed to any source demonstrating otherwise.

tive offset that is the functional equivalent of a pretrial attachment is also unavailable. *Id.,* at 3.

The OCC disagreed. See *In the Matter of Collection of Debts—Statute of Limitations on Administrative Setoff,* 58 Comp. Gen. 501, 504–505 (1979). In its view, the question was answered by

> "[t]he general rule . . . that statutes of limitations applicable to suits for debts or money demands bar or run only against the remedy (the right to bring suit) to which they apply and do not discharge the debt or extinguish, or even impair, the right or obligation, either in law or in fact, and the creditor may avail himself of every other lawful means of realizing on the debt or obligation. See *Mascot Oil Co.* v. *United States*, 42 F. 2d 309 (Ct. Cl. 1930), affirmed 282 U. S. 434; and 33 Comp. Gen. 66 (1953). See also *Ready-Mix Concrete Co.* v. *United States*, 130 F. Supp. 390 (Ct. Cl. 1955)." *Ibid.*

That Congress had time-barred the judicial remedy, OCC reasoned, imposed no limit on the administrative remedy.

The OLC–OCC dispute reveals that, even under the interpretation of subsection (a)—the one we are adopting—that considers it applicable only to court proceedings, subsection (i) is not mere surplusage. It clarifies that administrative offsets are not covered by subsection (a) even if they are viewed as an adjunct of a court action.

To accept petitioners' argument, on the other hand, we would have to hold either that §2415(a) applied to administrative actions when it was enacted in 1966 or that it was extended to reach administrative actions when subsection (i) was added in 1982. The clear meaning of the text of §2415(a), which has not been amended, refutes the first of these propositions, and accepting the latter would require us to conclude that in 1982 Congress elected to enlarge §2415 to cover administrative proceedings by

inserting text expressly excluding a single administrative vehicle from the statute's reach. It is entirely unrealistic to suggest that Congress would proceed by such an oblique and cryptic route.

## III

Petitioners contend that interpreting §2415(a) as applying only to judicial actions results in a statutory scheme with peculiarities that Congress could not have intended. For example, petitioners note that while they are required by statute to preserve their records regarding royalty obligations for only seven years, 30 U. S. C. §1724(f), the interpretation of §2415(a) adopted by the Court of Appeals permits MMS to issue payment orders that reach back much farther.

We are mindful of the fact that a statute should be read where possible as effecting a "'symmetrical and coherent regulatory scheme,'" *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 133 (2000), but here petitioners' alternative interpretation of §2415(a) would itself result in disharmony. For instance, under FOGRSFA, MMS payment orders regarding oil and gas leases are now prospectively subject to a 7-year statute of limitations except with respect to obligations arising out of leases of Indian land. Consequently, if we agreed with petitioners that §2415(a) applies generally to administrative proceedings, payment orders relating to oil and gas royalties owed under leases of Indian land would be subject to a shorter (*i.e.,* 6-year) statute of limitations than similar payment orders relating to leases of other public-domain lands (which would be governed by FOGRSFA's new 7-year statute). Particularly in light of Congress' exhortation that the Secretary of the Interior "aggressively carry out his trust responsibility in the administration of Indian oil and gas," 30 U. S. C. §1701(a)(4), it seems unlikely that Congress intended to impose a shorter statute of limitations for payment orders

regarding Indian lands.

Petitioners contend, finally, that interpreting §2415(a) as applying only to judicial actions would frustrate the statute's purposes of providing repose, ensuring that actions are brought while evidence is fresh, lightening recordkeeping burdens, and pressuring federal agencies to assert federal rights promptly. These are certainly cogent policy arguments, but they must be viewed in perspective.

For one thing, petitioners overstate the scope of the problem, since Congress of course can enact and has enacted specific statutes of limitations to govern specific administrative actions. See, *e.g.,* 42 U. S. C. §5205(a)(1) (statute of limitations for an administrative action to recover payments made to state governments for disaster or emergency assistance). Indeed, in 1996, FOGRSFA imposed just such a limitation prospectively on all non-Indian land, oil, and gas lease claims.

Second, and more fundamentally, the consequences of interpreting §2415(a) as limited to court actions must be considered in light of the traditional rule exempting proceedings brought by the sovereign from any time bar. There are always policy arguments against affording the sovereign this special treatment, and therefore in a case like this, where the issue is how far Congress meant to go when it enacted a statute of limitations applicable to the Government, arguing that an expansive interpretation would serve the general purposes of statutes of limitations is somewhat beside the point. The relevant inquiry, instead, is simply how far Congress meant to go when it enacted the statute of limitations in question. Here prior to the enactment of §2415(a) in 1966, contract actions brought by the Government were not subject to any statute of limitations. See *Guaranty Trust Co.,* 304 U. S., at 132. Absent congressional action changing this rule, it remains the law, and the text of §2415(a) betrays no intent to change this rule as it applies to administrative proceed-

ings.

In the final analysis, while we appreciate petitioners' arguments, they are insufficient to overcome the plain meaning of the statutory text.  We therefore hold that the 6-year statute of limitations in §2415(a) applies only to court actions and not to the administrative proceedings involved in this case.

*        *        *

For these reasons, the judgment of the Court of Appeals for the District of Columbia Circuit is affirmed.

*It is so ordered.*

THE CHIEF JUSTICE and JUSTICE BREYER took no part in the consideration or decision of this case.