# Emergency Statutes That Do Not Expressly Require a National Emergency Declaration

The National Emergencies Act's coverage is not limited to statutes that expressly require the President to declare a national emergency, but rather extends to any statute "conferring powers and authorities to be exercised during a national emergency," unless Congress has exempted such a statute from the Act.

August 24, 2016

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

The National Emergencies Act ("NEA"), Pub. L. No. 94-412, 90 Stat. 1255 (1976) (codified as amended at 50 U.S.C. §§ 1601–1651), states that "[a]ny provisions of law conferring powers and authorities to be exercised during a national emergency shall be effective and remain in effect . . . only when the President . . . specifically declares a national emergency." 50 U.S.C. § 1621(b). You have asked whether this and other provisions of the NEA apply to statutes that grant powers and authorities in a national emergency, but do not expressly require the President to declare such an emergency. [1]

We have previously issued conflicting guidance on this question. In a 1978 opinion, we stated that the NEA applied to—and thus that the President was required to declare a national emergency before invoking— section 6 of the Davis-Bacon Act, 40 U.S.C. § 276a-5 (1976), a statute

---

[1] In considering this question, we requested and received the views of the Department of Defense, the Department of Energy, the Department of Homeland Security, and the Department of Commerce. *See* E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Robert S. Taylor, Acting General Counsel, Department of Defense, *Re: OLC Opinion on National Emergencies Act*, att. (May 17, 2016, 1:09 PM); E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Eric Fygi, Deputy General Counsel, Department of Energy, *Re: OLC Opinion on National Emergencies Act* (May 3, 2016, 10:34 AM); E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Joseph Maher, Principal Deputy General Counsel, Department of Homeland Security, *Re: OLC Opinion on National Emergencies Act*, att. (May 3, 2016, 10:34 AM); E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Lauren Sun, Counsel to the General Counsel, Department of Commerce, *Re: Department of Commerce Response on National Emergencies Act* (Apr. 15, 2016, 4:28 PM).

that granted powers "[i]n the event of a national emergency" but did not expressly require the President to declare the emergency. *Wage and Price Standards in Government Procurement*, 2 Op. O.L.C. 239, 243 (1978) ("*Wage and Price Standards*"). In 1982, in contrast, in footnote 78 of an opinion entitled *Legal Authorities Available to the President to Respond to a Severe Energy Supply Interruption or Other Substantial Reduction in Available Petroleum Products*, we advised that section 710(e) of the Defense Production Act, 50 U.S.C. app. § 2160(e) (1982), was "not subject to the provisions of the National Emergencies Act" because it did not "expressly require the President to declare a national emergency in order to" exercise the powers it granted. 6 Op. O.L.C. 644, 674 n.78 (1982) ("*Severe Energy Supply Interruption*").

For the reasons set forth below, we conclude that the NEA's coverage is not limited to statutes that expressly require the President to declare a national emergency, but rather extends to *any* statute "conferring powers and authorities to be exercised during a national emergency," unless Congress has exempted such a statute from the Act. 50 U.S.C. § 1621(b). To the extent that footnote 78 of our 1982 *Severe Energy Supply Interruption* opinion is inconsistent with this conclusion, we no longer adhere to it.

## I.

The NEA, enacted in 1976, consists of five titles. Title I is backward-looking: It terminated most powers and authorities that the Executive possessed "as a result of the existence of any declaration of national emergency in effect on September 14, 1976," the date of the statute's enactment. 50 U.S.C. § 1601. Title I thus has limited continuing application.

Title II of the NEA—which consists of 50 U.S.C. §§ 1621 and 1622—prescribes rules for the declaration and termination of national emergencies. Section 1621(a) grants the President authority to "declare [a] national emergency" with respect to statutes "authorizing the exercise, during the period of a national emergency, of any special or extraordinary power." *Id.* § 1621(a); *see also id.* (requiring that such a declaration be transmitted to Congress and published in the *Federal Register*). Section 1621(b) states that "[a]ny provisions of law conferring powers and authorities to be exercised during a national emergency shall be effective and

remain in effect (1) only when the President (in accordance with subsection (a) of this section), specifically declares a national emergency, and (2) only in accordance with [the NEA]." *Id.* § 1621(b). Section 1622 provides that the President or Congress may terminate "[a]ny national emergency declared by the President in accordance with [the NEA]," and that such an emergency shall in any event "terminate on the anniversary of the declaration of that emergency," unless the President timely issues "a notice stating that such emergency is to continue in effect." *Id.* § 1622(a), (d). Once a national emergency declared by the President terminates, "any powers or authorities exercised by reason of said emergency shall cease to be exercised." *Id.* § 1622(a); *see also id.* (listing three exceptions to this requirement).

Titles III and IV—which consist of 50 U.S.C. §§ 1631 and 1641 respectively—set forth requirements that the President and other officers must follow once the President has declared a national emergency. Section 1631 provides that "[w]hen the President declares a national emergency, no powers or authorities made available by statute for use in the event of an emergency shall be exercised unless and until the President specifies the provisions of law under which he proposes that he, or other officers will act." *Id.* § 1631. Section 1641 states that "[w]hen the President declares a national emergency, or Congress declares war," the President and each executive agency must maintain a file and index of, and transmit to Congress, certain orders, rules, and regulations "issued during such emergency or war issued pursuant to such declarations." *Id.* § 1641(a)–(b). In addition, the President must periodically transmit to Congress "a report on the total expenditures incurred by the United States Government . . . which are directly attributable to the exercise of powers and authorities conferred by such declaration." *Id.* § 1641(c).

Last, title V exempts several listed statutes from the NEA's requirements. *See id.* § 1651(a). It also directs congressional committees to issue a report and recommendations within nine months of the NEA's enactment. *Id.* § 1651(b).

At least two types of statutes grant powers or authorities to the Executive during national emergencies. Some statutes provide that certain specified powers or authorities may be exercised during a "national emergency" that has been "declared by the President" or "proclaimed by the President." *See, e.g.*, 10 U.S.C. § 12302(a) (authorizing the secretaries of

the military departments and the Coast Guard to order units in the Ready Reserve to active duty "[i]n time of national emergency declared by the President"); 14 U.S.C. § 367(3) (authorizing the Coast Guard temporarily to retain enlisted personnel beyond their terms of enlistment "during a period of . . . national emergency as proclaimed by the President"). We will refer to these statutes as *declared national emergency statutes*. Other statutes provide that particular powers or authorities may be exercised during a "national emergency," without expressly requiring that the emergency be declared or proclaimed by the President or any other officer or entity. *See, e.g.*, 10 U.S.C. § 871(b) (permitting the commutation of certain court-martial sentences "[i]n time of . . . national emergency"); 14 U.S.C. § 331 (authorizing the secretary of the department in which the Coast Guard is operating to order any regular officer on the retired list to active duty "[i]n time of . . . national emergency"). We will refer to these statutes as *national emergency statutes*.[2]

As noted above, we have previously issued conflicting statements concerning whether the NEA's requirements are applicable only to declared national emergency statutes, or to both declared national emergency statutes and national emergency statutes. In our 1978 *Wage and Price Standards* opinion, we stated that "under Title II of the [NEA], a Presidential declaration of national emergency [was] required in order to" invoke section 6 of the Davis-Bacon Act, a national emergency statute. 2 Op. O.L.C. at 243; *see* 40 U.S.C. § 276a-5 (1976) (granting the President authority to suspend provisions of the Davis-Bacon Act "[i]n the event of a national emergency"). In 1982, in contrast, we indicated that only those statutes that "expressly require the President to declare a national emergency"—that is, declared national emergency statutes—are "subject to the provisions of the [NEA]." *Severe Energy Supply Interruption*, 6 Op. O.L.C. at 674 n.78.

## II.

To resolve the conflict in our prior opinions, we now consider whether the NEA's provisions apply only to declared national emergency statutes or to both declared national emergency statutes and national emergency

---

[2] We do not address whether the NEA applies to statutes other than declared national emergency statutes and national emergency statutes.

statutes. In Part II.A, we conclude that the NEA's text unambiguously extends to both types of statutes. In Part II.B, we consider the NEA's legislative history and find that it reinforces that conclusion.

## A.

We begin with the text of the NEA. *See Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013) ("As in any statutory construction case, '[w]e start, of course, with the statutory text.'" (alteration in original) (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006))). As we noted earlier, the NEA's first forward-looking provision, 50 U.S.C. § 1621, contains two subsections: subsection (a) states that "[w]ith respect to Acts of Congress authorizing the exercise, *during the period of a national emergency*, of any special or extraordinary power, the President is authorized to declare such national emergency," 50 U.S.C. § 1621(a) (emphasis added); and subsection (b) states that "[a]ny provisions of law conferring powers and authorities to be exercised *during a national emergency* shall be effective and remain in effect . . . only when the President (in accordance with subsection (a) of this section), specifically declares a national emergency," *id.* § 1621(b) (emphasis added). The language of each of these subsections straightforwardly extends to national emergency statutes. National emergency statutes are both "Acts of Congress authorizing the exercise, during the period of a national emergency, of . . . special or extraordinary power[s]" and "provisions of law conferring powers and authorities to be exercised during a national emergency"—indeed, they often use precisely or nearly those terms. *See, e.g.*, 10 U.S.C. § 2208(*l*)(2) (authorizing the Secretary of Defense to waive certain notification requirements "during a period of . . . national emergency"); 7 U.S.C. § 4208 (waiving certain provisions with respect to the acquisition or use of farmland for national defense purposes "during a national emergency"). And neither subsection of section 1621 contains any language limiting section 1621's coverage to statutes that themselves require a presidential declaration of emergency: section 1621(a) does not state, for instance, that it applies only to statutes granting powers "during the period of a national emergency *declared by the President*," and section 1621(b) does not state that it applies to provisions of law conferring powers and authorities to be exercised "during a national emergency *declared by the President*."

This straightforward reading of section 1621(a) and (b) is reinforced by the fact that both subsections would be almost entirely superfluous if they extended only to declared national emergency statutes. There would be no need for subsection (a) to "authorize[]" the President to declare national emergencies only with respect to declared national emergency statutes, because statutes that apply "during a national emergency *declared by the President*" already implicitly authorize such declarations. (If they did not, they would have been inoperative prior to the NEA's enactment.) Similarly, there would be no need for subsection (b) to prohibit the President from exercising powers or authorities granted by declared national emergency statutes except "when the President . . . specifically declares a national emergency," because those statutes already require a presidential declaration of national emergency as a precondition to their operation. *See, e.g.*, 10 U.S.C. § 155(f)(4) (suspending limitations on tours of duty "during a national emergency declared by the President"). To interpret the provisions of section 1621 as limited to declared national emergency statutes would thus violate the basic principle that "'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (alteration in original) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

By their plain terms, then, both subsections of 50 U.S.C. § 1621 apply to national emergency statutes. Subsection (a) authorizes the President to declare a national emergency "[w]ith respect to" national emergency statutes, 50 U.S.C. § 1621(a), and subsection (b) requires the President to declare a national emergency "in accordance with subsection (a)" before any "powers and authorities" conferred by a national emergency statute for use in the event of a national emergency may be exercised, *id.* § 1621(b).

It follows from this conclusion that the other forward-looking provisions of the NEA also apply to national emergency statutes. This is because each of those provisions is expressly tied to the declaration of a national emergency under section 1621 or to the statutory powers or authorities triggered by such a declaration. The first additional forward-looking provision, 50 U.S.C. § 1622, states that the President or Congress may terminate "[a]ny national emergency declared by the President in accordance with" title II of the NEA, and that upon such termination "any

powers or authorities exercised by reason of said emergency shall cease to be exercised." *Id.* § 1622(a). Section 1621 forms part of title II of the NEA, and, as we have just discussed, section 1621(b) requires the President to "declare[]" a national emergency "in accordance with" section 1621(a) before any powers and authorities conferred by a national emergency statute for use in the event of a national emergency may be exercised. As a result, such powers and authorities can only be exercised "by reason of" an emergency declared under title II of the NEA. *Id.* § 1622(a). Section 1622 thus authorizes the President or Congress to terminate any emergency triggering the exercise of powers and authorities conferred by a national emergency statute, thereby causing those powers and authorities to "cease to be exercised." *Id.*

The next provision of the NEA, 50 U.S.C. § 1631, provides that "[w]hen the President declares a national emergency, no powers or authorities made available by statute for use in the event of an emergency shall be exercised unless and until the President specifies the provisions of law under which he proposes that he, or other officers will act." *Id.* § 1631. National emergency statues make "powers or authorities . . . available . . . for use in the event of an emergency," *see, e.g.*, 10 U.S.C. § 871(b) (permitting the commutation of certain court-martial sentences "[i]n time of . . . national emergency"); and (as we have said), under section 1621(b) of the NEA, the President must "declare[] a national emergency" in order to invoke a national emergency statute. Accordingly, section 1631 provides that the President and other officers cannot exercise powers or authorities conferred by a national emergency statute "unless and until the President specifies the provisions of law under which he proposes that he, or other officers will act." 50 U.S.C. § 1631.

Finally, 50 U.S.C. § 1641 states that "[w]hen the President declares a national emergency, or Congress declares war," the President and executive agencies must maintain and transmit to Congress all rules, regulations, and significant orders "issued during such emergency or war . . . pursuant to such declarations." *Id.* § 1641(a)–(b). It also provides that the President must periodically report to Congress any federal expenditures "directly attributable to the exercise of powers and authorities conferred by such declaration." *Id.* § 1641(c). Because the President must declare a national emergency in order to exercise powers or authorities conferred by a national emergency statute for use in the event of a national emergency,

any rules, regulations, or significant orders issued in reliance on those powers or authorities are issued "pursuant to" such a declaration. *Id.* § 1641(a); *see Webster's Third New International Dictionary* 1848 (1966) (defining "pursuant to" to mean "in the course of carrying out; in conformance to or agreement with"). And, for the same reason, any expenditures incurred by the United States Government when exercising such powers and authorities are "directly attributable to the exercise of powers and authorities conferred by such declaration." 50 U.S.C. § 1641(c). The President and executive agencies therefore must report such orders, regulations, rules, and expenditures in accordance with the requirements of section 1641.

In sum, the plain language of section 1621 makes clear that the NEA applies to national emergency statutes, as well as declared national emergency statutes. As a result, each forward-looking provision of the NEA unambiguously extends to both types of statutes as well. If it chooses, of course, Congress can exempt particular national emergency statutes or declared national emergency statutes from the scope of the NEA. However, we have no occasion to consider here whether any particular statute is so exempt.

## B.

Because the NEA's provisions unambiguously apply to national emergency statutes, it is unnecessary for us to examine the statute's legislative history. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."). But to the extent the legislative history is relevant, it too indicates that Congress intended the NEA's provisions to apply to national emergency statutes.

Both the NEA's House report and testimony delivered prior to its enactment by Antonin Scalia, who was then the Assistant Attorney General for the Office of Legal Counsel, indicate that Congress intended titles II and III of the NEA to apply to national emergency statutes. The House report states:

> [Title II] of the bill provides, for the first time, explicit provision for the President to make the declaration of national emergency which

certain statutes require. . . . This clarifies an existing problem as to emergency statutes. At present this power can be implied with respect to some statutes—for example, those which state that certain laws are deemed to be in effect "during any . . . period of national emergency declared by the President[" provide], in so many words, [that the President] may declare such an emergency; and *some statutes dependent upon the existence of states of emergency do not specifically say who shall declare them*. . . . When the Act fully takes effect, emergency provisions will only be implemented by the President in accordance with the terms of Title II and Title III of the amended bill.

H.R. Rep. No. 94-238, at 6 (1975) (second ellipsis in original) (emphasis added). This passage, which repeats almost verbatim testimony that Assistant Attorney General Scalia had delivered one month earlier, makes clear that Congress did not intend for the NEA to be limited to statutes "which state that certain laws are deemed to be in effect 'during any . . . period of national emergency declared by the President'"—that is, declared national emergency statutes. *Id.*; *see National Emergencies Act: Hearings Before the Subcomm. on Admin. Law & Governmental Relations of the H. Comm. on the Judiciary on H.R. 3884*, 94th Cong. 91 (1975) ("NEA Hearings") (statement of Assistant Attorney General Scalia) (similar). Rather, as the House report also explains, the NEA was designed to ensure that "statutes dependent upon the existence of states of emergency [that] *do not specifically say who shall declare them*"—that is, national emergency statutes— "will only be implemented by the President in accordance with the terms of Title II and Title III" of the NEA. H.R. Rep. No. 94-238, at 6 (emphasis added); *see* NEA Hearings at 91. The House report and Assistant Attorney General Scalia's testimony thus indicate that Congress intended that the President would implement national emergency statutes "only . . . in accordance with" titles II and III of the NEA.

A subsequent passage from the House report reaffirms this intention. That passage (which again borrows nearly verbatim from Assistant Attorney General Scalia's testimony) explains that in some cases, "changes in law automatically take effect during times of national emergency," but that title III of the NEA would "change this by establishing that *no* provision of law shall be triggered by a declaration of national emergency unless and until the President specifies that provision as one of those

under which he or other officers will act." H.R. Rep. No. 94-238, at 7–8 (emphasis added); *see* NEA Hearings at 93 (similar). The report (and Assistant Attorney General Scalia's testimony) cite two statutes as "[e]xamples" of the provisions that would be affected by title III of the NEA in this manner, and one of those statutes—37 U.S.C. § 202(e)—was a national emergency statute. H.R. Rep. No. 94-238, at 8 n.3; *see* NEA Hearings at 93; 37 U.S.C. § 202(e) (1970) (altering the pay of certain rear admirals who served in active duty "in time of . . . national emergency"). The inclusion of this statute as one of two such examples strongly suggests that the drafters expected the NEA to apply to national emergency statutes.

In footnote 78 of our *Severe Energy Supply Interruption* opinion, we identified two pieces of legislative history as supporting the contrary view that statutes that do not "expressly require the President to declare a national emergency" are "not subject to the provisions of" the NEA. 6 Op. O.L.C. at 674 n.78. On closer examination, however, we do not think either of these passages from the legislative history supports such a conclusion.

First, the *Severe Energy Supply Interruption* opinion quoted a sentence from Assistant Attorney General Scalia's testimony, repeated in both the NEA's House report and its principal Senate report, stating that "[l]aws like the Defense Production Act of 1950, which do not require a Presidential declaration of emergency for their use, are not affected by this title [*i.e.*, Title I]—even though they may be referred to in a lay sense as 'emergency' statutes." *Id.* (second alteration in original) (quoting NEA Hearings at 91); *see* H.R. Rep. No. 94-238, at 5; S. Rep. No. 94-1168, at 4 (1976). The opinion recognized that this statement "refers only to Title I of the NEA," but nevertheless appears to have inferred from it that laws that "do not require a Presidential declaration of emergency for their use" are categorically exempt from the NEA. *Severe Energy Supply Interruption*, 6 Op. O.L.C. at 674 n.78. The basis for this inference, however, is unclear. As Assistant Attorney General Scalia explained in the sentence preceding the passage quoted in the *Severe Energy Supply Interruption* opinion, his statement was based on the particular terms of title I, which at the time he delivered his testimony expressly stated that title I applied only to those statutes relying on "'a general declaration of emergency made by the President *pursuant to a statute authorizing him to declare a*

*national emergency*.'" NEA Hearings at 90–91 (emphasis added) (quoting H.R. 3884, 94th Cong. § 101(b) (as introduced in House, Feb. 27, 1975)).[3] That language was removed from the NEA before it was enacted, however, *see* 50 U.S.C. § 1601(a)–(b) (terminating powers and authorities exercised pursuant to "a general declaration of emergency made by the President"), and even in the draft discussed by Assistant Attorney General Scalia it was applicable to title I alone. This passage thus sheds no light on whether the enacted versions of titles II, III, and IV—the forward-looking parts of the NEA with which we are concerned—apply to national emergency statutes.

Second, the *Severe Energy Supply Interruption* opinion quoted and relied upon two sentences from the NEA's Senate report to support its conclusion. The first sentence states that "'[t]he provisions of Title II . . . are designed to insure congressional oversight of Presidential actions *pursuant to declarations of a national emergency authorized by an act of Congress*.'" 6 Op. O.L.C. at 674 n.78 (emphasis and alterations in original) (quoting S. Rep. No. 94-1168, at 4). This statement remains true, however, even if the NEA applies to national emergency statutes, because by the Act's terms, *any* statute that falls within the scope of 50 U.S.C. § 1621 may be invoked only "'pursuant to declarations of a national emergency authorized by an act of Congress.'" *Id.* (emphasis removed); *see* 50 U.S.C. § 1621(b) (prohibiting the President from invoking statutes

---

[3] Indeed, Assistant Attorney General Scalia made this statement in part to draw a contrast between titles I and II of the draft bill. The relevant portion of his testimony reads, in full:

> Any emergency declared after the date of enactment of this legislation would not be terminated by title I, but would instead fall under the limiting scheme created by title II. Moreover, title I would only affect those statutes whose conferral of powers is expressly conditioned upon a Presidential declaration of national emergency. This is made clear by section 101(b), which defines the phrase "any national emergency in effect" to mean only "a general declaration of emergency made by the President pursuant to a statute authorizing him to declare a national emergency."
>
> Thus, laws like the Defense Production Act of 1950, which do not require a Presidential declaration of emergency for their use, are not affected by this title—even though they may be referred to in a lay sense as "emergency" statutes.

NEA Hearings at 90–91. Furthermore, one paragraph after this discussion of title I, Assistant Attorney General Scalia proceeded to separately describe the provisions and effects of title II. *See id.* at 91.

unless he "specifically declares a national emergency" in accordance with the NEA). The opinion also quoted a sentence from the Senate report stating that the NEA "'is directed solely to Presidential *declarations of emergency*.'" *Severe Energy Supply Interruption*, 6 Op. O.L.C. at 674 n.78 (emphasis in original) (quoting S. Rep. No. 94-1168, at 4). But in context, this sentence only clarifies that the NEA does not apply to or limit authorizations based on national emergencies declared by Congress: the immediately preceding sentence explains that "[t]he provisions of this bill are not meant to supersede existing provisions of law which authorize declarations of emergency by the Congress." S. Rep. No. 94-1168, at 4.

The NEA's legislative history, then, contains two strong indications that Congress intended the Act to extend to national emergency statutes. Neither of the passages cited in our 1982 *Severe Energy Supply Interruption* opinion suggests that Congress intended to limit the NEA to declared national emergency statutes, and we have not found any other legislative history that supports such a reading. The NEA's legislative history thus reinforces what its text plainly provides: that the provisions of the NEA extend to declared national emergency statutes and national emergency statutes alike.[4]

### III.

For the foregoing reasons, we conclude that the NEA's coverage is not limited to statutes that expressly require the President to declare a national emergency. Rather, the NEA applies to any statute "conferring powers and authorities to be exercised during a national emergency," unless Congress has exempted such a statute from the Act. 50 U.S.C. § 1621(b).

KARL R. THOMPSON
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[4] We note that neither we nor any of the agencies with which we consulted in preparing this opinion identified any administrative practice conducted in reliance on the interpretation of the NEA set forth in our *Severe Energy Supply Interruption* opinion. *See supra* note 1. We also have not found any basis for concluding that Congress acquiesced in or ratified that interpretation.