Concurring opinion filed by Circuit Judge Tatel, with whom Circuit Judges ■ Millett and Pillard join. Concurring opinion filed by Circuit Judge Wilkins, with whom Circuit Judge Rogers joins. Opinion concurring in the judgment filed by Circuit Judge Griffith. Dissenting opinion filed by Circuit ■ Judge Henderson. Dissenting opinion filed by Circuit Judge Kavanaugh, with whom Senior Circuit Judge Randolph joins. ■ Dissenting opinion filed by Senior Circuit Judge Randolph. Tatel, Circuit Judge, with whom Circuit Judges Millett and Pillard join, concurring: Finding no way to avoid the constitutional question, • the en- banc court reinstates the panel opinion’s statutory holdings. Were this court to address the statutory questions, which are fully briefed, I would have resolved them differently. Specifically, I would have concluded that (1) the Bureau reasonably interpreted RESPA to impose liability on PHH, (2) the applicable statute of limitations reaches back five years to cover PHH’s conduct, and (3) the Bureau’s prospective injunction against PHH is permissible, even if its retrospective disgorgement penalties are not. First, the Bureau’s interpretation of RESPA. Section 8(c) states that “[njothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or ... services actually performed.” 12 U.S.C. § 2607(c) (emphasis added). The CFPB interpreted this provision to insulate from liability just payments for referral services made “solely for the service actually being provided on its own merits,” Director’s Decision at 17—that is, that “bona fide” payments excludes payments whose purpose is to serve as a quid pro quo for referrals. PHH argues that Section 8(c) unambiguously permits regulated entities to give or receive kickbacks in the form of reinsurance arrangements as long as the kickbacks do not exceed the reasonable market value for reinsurance services. In other words, PHH insists that “bona fide” admits of only one meaning—that a “payment is ‘bona fide’ if it bears a reasonable relationship to the value of the services actually provided in return.”- Pet’rs’ Br. 43. But Section 8(c)’s use of the phrase “bona fide” is not unambiguous. Neither it nor any other provision of RESPA defines the term, arid looking to its “ordinary or natural meaning”—as we must when the statute supplies no definition of its own, FDIC v. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)—like-wise fails to resolve the ambiguity. To the contrary, dictionary definitions reflect a range of meanings encompassed by the term, including the very definition adopted by the Bureau. See Webster’s New Collegiate Dictionary 125 (1973), (“Made in good faith without fraud or deceit ... , made with earnest intent ,... , neither specious nor counterfeit.”); Black’s Law Dictionary 223 (4th Ed. Rev’d 1968) (“In or with good faith; honestly, openly, and sincerely; without deceit or fraud ... real, actual, genuine, and not feigned.”). The existence of these varied definitions, “each making some sense under the statute, itself indicates” the statute’s ambiguity. National Railroad Passenger Corp. v. Boston & Maine Corp., 503 U.S. 407, 418, 112 S.Ct, 1394, 118 L.Ed.2d 52 (1992). Moreover, the Bureau’s interpretation of “bona fide” is perfectly reasonable, as the previous citations to both Webster’s and Black’s demonstrate. Indeed, PHH does not argue to the contrary, other than to claim that because RESPA has some criminal applications—none relevant here—the rule of lenity requires that any statutory ambiguity be resolved in PHH’s favor. The Supreme Court, however, has done just the opposite, deferring to an agency’s interpretation of a statute even though the Court recognized that violations of the statute could carry criminal penalties. Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 704 n.18, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (noting that the Court has “never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement”). Though there is some dispute about whether Chevron deference remains appropriate for agency interpretations of statutes with both civil and criminal applications, see Whitman v. United States, — U.S. —, 135 S.Ct. 352, 352-54, 190 L.Ed.2d 381 (2014) (Scalia, J., respecting the denial of certiorari) (calling Babbitt into question (citing Leocal v. Ashcroft, 543 U.S. 1, 11-12 n.8, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004))), our court continues to adhere to the view that it is, see Competitive Enterprise Institute v. Department of Transportation, 863 F.3d 911, 915 n.4 (D.C. Cir. 2017) (“We apply the Chevron framework to this facial challenge even though violating [the statute] can bring criminal penalties.”). Even were Chevron inapplicable, given my view that the agency’s interpretation was correct as well as reasonable, PHH has failed to show that the statute is sufficiently ambiguous as to merit application of the rule of lenity. “[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended.” United States v. Castleman, — U.S. —, 134 S.Ct. 1405, 1416, 188 L.Ed.2d 426 (2014) (quoting Barber v. Thomas, 560 U.S. 474, 488, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010)). Because RES-PA Section 8 is ambiguous, and because the Bureau’s interpretation is reasonable, I would have held that PHH is liable under the statute. There remains the question of how far back the Bureau can reach in seeking to impose liability on regulated entities. Specifically, the question is whether administrative actions to enforce RESPA’s ban on referral fees are subject to the specific three year statute of limitations contained in RESPA, 12 U.S.C. § 2614, as PHH argues, or whether, as the Bureau contends, they are subject only to the general five year statute of limitations on any action or administrative proceeding for “enforcement of any civil fine, penalty, or forfeiture” contained in 28 U.S.C. § 2462. Given that RESPA provides that “[a]ny action” to enforce the ban on referral fees initiated by the Bureau must be brought within three years, 12 U.S.C. § 2614, the question turns on whether the word “action” encompasses both court and administrative actions. RESPA’s plain text favors the Bureau’s view that the provision limits the timing of only court actions, not administrative actions like the one at issue here. The clause expressly refers to actions that “may be brought in the United States district court” and specifies that such actions are generally subject to a one year statute of limitations, except that “actions brought by the Bureau, the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years.” Id. Given that state attorneys general and insurance commissioners have no authority to bring administrative enforcement actions, even if they may bring actions in court, it would be odd to conclude that this provision circumscribes when the same actors can bring administrative actions that they could never have brought in the first place. Reinforcing this point, the RE SPA provision is entitled “Jurisdiction of courts; limitations.” If the statute, read alone, was not clear enough, the Bureau would still be entitled to a presumption that statutes of limita-_tions “are construed narrowly against the government”—a principle “rooted in the traditional rule ... [that] time does not run against the King.” BP America Production Co. v. Burton, 549 U.S. 84, 95-96, 127 S.Ct. 638, 166 L.Ed.2d 494 (2006). “A corollary of this rule is that when the sovereign elects to subject itself to a statute of limitations, the sovereign is given the benefit of the doubt if the scope of the statute is ambiguous.” Id. at 96, 127 S.Ct. 638. Given this, the court would have to presume that RESPA’s statute of limitations does not cover administrative actions. The Supreme Court addressed a remarkably similar issue in BP America, 549 U.S. 84, 127 S.Ct. 638, 166 L.Ed.2d 494, in which the Court unanimously held that a general statute of limitations for Government contract actions applied only to court actions, not to administrative proceedings initiated by the Government. The Bureau thus reasonably interpreted PHH’s actions as running afoul of RESPA and correctly concluded that it could impose liability on conduct falling within the five-year limitations period. Based on this liability, the Bureau sought two forms of relief: disgorgement for PHH’s past harms and an injunction to prevent future ones. For substantially the reasons given by the panel, I agree that the Bureau ran afoul of the due process clause by failing to give PHH adequate notice in advance of imposing penalties for past conduct. Importantly for our purposes, however, the imposition of prospective relief is unaffected by that fair notice issue. See, e.g., Landgraf v. USI Film Products, 511 U.S. 244, 273 (1994) (“When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.”); Bowen v. Georgetown University Hospital, 488 U.S. 204, 221, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (Scalia, J., concurring) (“Retroactivity (in agency adjudications] is not only permissible but standard.”). Though I disagree with the panel’s now-reinstated statutory holdings, I completely agree with the en banc court that the Bureau’s structure does not violate the constitutional separation of powers. PHH is free to ask the Supreme Court to revisit Humphrey’s Executor and Morrison, but that argument has no truck in a circuit court of appeals. Attempts to distinguish those cases—by rereading Humphrey’s as hinging on the multi-member structure of the FTC, or by characterizing the Independent Counsel in Morrison as an insignificant inferior officer—are, at best, strained. Indeed, to uphold the constitutionality of the Bureau’s structure we need scarcely go further than Morrison itself, which approved a powerful independent entity headed by a single official and along the way expressly compared that office’s “prosecutorial powers” to the “civil enforcement powers” long wielded by the FTC and other independent agencies. Morrison v. Olson, 487 U.S. 654, 692 n.31, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). Although it may (or may not) be wise, as a policy matter, to structure an independent agency as a multimember body, nothing in the Constitution’s separation of powers compels that result. The Constitution no more “enacts” social science about the benefits of group decision-making than it does “Mr. Herbert Spencer’s Social Statics.” Lochner v. New York, 198 U.S. 45, 75, 25 S.Ct. 539, 49 L.Ed. 937 (1905) (Holmes, J. dissenting).